PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TINA MYERS, | ) | |
| | ) | CASE NO. 4:14cv2421 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| MUTUAL OF OMAHA LIFE INSURANCE COMPANY, | ) ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Resolving ECF No. 19] |

Plaintiff Tina Myers commenced this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., against Defendant United of Omaha Life Insurance Company (incorrectly named in the complaint as Mutual of Omaha Life Insurance Company). Myers challenges the administrator's decision denying her long term disability benefits. The Court has reviewed the parties' merits briefs, responses, the administrative record, and the governing law. For the reasons that follow, the Court denies Defendant's motion for judgment on the merits (ECF No. 19) and remands the matter to the plan administrator with instructions.

**I. Background**

Myers was employed by TecnoCap, LLC as a Customer Service Supervisor. ECF No. 31 ¶ 1 (A.R. 837). Customer Service Supervisor is considered a sedentary strength occupation, which required Myers to exert up to 10 pounds of force occasionally and or a negligible amount

(4:14cv2421)

of force frequently to lift, carry, push, pull or otherwise move objects. *Id.* (A.R. 103–04).

As a TecnoCap employee, Myers participated in the company's employee welfare benefit plan ("the Plan"), a component of which was the Group Insurance Policy, No. GLTD-OAKUZ (the "Policy"), issued by Defendant, United of Omaha Life Insurance Company ("United"). ECF No. 31 ¶ 2 (A.R. 1–60).

The Policy provides a monthly benefit in the event that a participant became disabled. The Policy defines disabled as follows:

> **Disability and Disabled** mean that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which You are:
>
> > (a) prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis; and
> >
> > (b) unable to generate Current Earnings which exceed 99% of Your Basic Monthly Earnings due to that same Injury or Sickness.
>
> After a Monthly Benefit has been paid for 2 years, Disability and Disabled mean You are unable to perform all of the Material Duties of any Gainful Occupation.
>
> Disability is determined relative to Your ability or inability to work. It is not determined by the availability of a suitable position with your employer.

ECF No. 31 ¶ 3 (A.R. 49–50). The Policy provides the following definitions for Material Duties and regular Occupation:

> **Material Duties** means the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified. In no event will We consider working an average of more than 40 hours per week in itself to be a part of material duties. One of the material duties of Your Regular Occupation is the ability to work for an employer on a full-time basis.
>
> **Regular Occupation** means the occupation You are routinely performing when Your Disability begins. Your regular occupation is not limited to the specific

(4:14cv2421)

> position You held with the Policyholder, but will instead be considered to be a similar position or activity based on job descriptions included in the most current edition of the U.S. Department of Labor Dictionary of Occupational Titles (DOT). We have the right to substitute or replace the DOT with a service or other information that We determine of comparable purpose, with or without notice. To determine Your regular occupation, We will look at Your occupation as it is normally performed in the national economy, instead of how work tasks are performed for a specific employer, at a specific location, or in a specific area or region.

ECF No. 31 ¶ 4 (A.R. 50–51). The Policy excludes benefits for otherwise qualifying injuries or illnesses that existed prior to coverage:

> We will not provide benefits for Disability:
>
> (a) Caused by, contributed to by, or resulting from a Pre-existing Condition; and
>
> (b) which begins in the first 12 months after You are continuously insured under this Policy.
>
> A Pre-existing Condition means any Injury or Sickness for which You received treatment, advice or consultation, care or services including diagnostic measures, or had drugs or medicines prescribed or taken in the 3 months prior to the day You became insured under this Policy.

ECF No. 31 ¶ 5 (A.R. 35). United is vested with sole discretion "to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." ECF No. 31 ¶ 6 (A.R. 6). United makes claim determinations by first reviewing "each claim to ensure that it meets all policy provisions and eligibility requirements." ECF No. 27-5 at PageID #: 447 (A.R. 296). United "then review[s] the medical documentation in the file to determine maximum work capacity if the documented restrictions and limitations are supported by medical evidence." *Id.*

Myers's claim for disability is premised on Lyme disease. Myers contends that she contracted the disease after suffering a tick bite on her scalp around September 2012. ECF No.

3

(4:14cv2421)

27-1 at PageID #: 277 (A.R. 126). She was employed by TechnoCap until January 23, 2013, when she stopped working due to symptoms of extreme fatigue, body pain, inability to regulate her body temperature, brain fog, confusion and headaches. ECF No. 31 ¶ 7 (A.R. 837). The day before she stopped working (January 22, 2013), Myers was seen by Nurse Practitioner Renee Brongo. ECF No. 27-9 at PageID #: 657 (A.R. 506). Blood tests detected the presence of Lyme Disease Antibodies, but the Western Blot and IgG tests for Lyme disease were negative. ECF No. 27-2 at PageID #: 308–09 (A.R. 157–58). An attending physician statement completed by Brongo on March 18, 2012 indicated a diagnosis of chronic pain, headache, weakness, fatigue, and point tenderness with palpation, and limited Myers' ability to sit, stand, and walk in an eight hour workday to one hour each. ECF No. 30 ¶ 4 (A.R. 842–43).

Following this testing, Myers saw Dr. Adamovich, who ordered a PICC line placed, and a 28-day treatment for Lyme disease on March 21, 2013. ECF Nos. 27-17 at PageID #: 1089; 27-18 at PageID #: 1101 (A.R. 938, 950). Myers was seen by the Visiting Nurses Association over the next month for the administration of IV antibody treatments. ECF No. 31 ¶¶ 16–18 (A.R. 723–34). Dr. Adomovich also referred Myers's file to Dr. Limbu. Dr. Limbu completed a report on May 31, 2013, which stated that Myers reported multiple joint aches, a positive Parvovirus IgG test and a negative IgM and Western Blot test. ECF No. 27-7 at PageID #: 560 (A.R. 409). Dr. Limbu concluded that the positive test was in fact a false positive, and that Myers no longer needed antibiotics. ECF No. 27-7 at PageID #: 561 (A.R. 410). Nonetheless, when Myers saw Dr. Adamovich on June 24, 2013, she was assessed with "chronic, active" Lyme disease. ECF No. 27-8 at PageID #: 603 (A.R. 452).

(4:14cv2421)

Myers continued to seek treatment for Lyme disease with Dr. Joseph Joseph. On July 29, 2013, she underwent additional blood testing that was positive for acute and chronic Epstein-Barr Virus. ECF No. 30 ¶ 6 (A.R. 219, 236). Myers also tested positive for cytomegalovirus with elevated IgG results. ECF No. 30 ¶ 6 (A.R. 235–36). On July 30, 2013, additional blood testing revealed a positive IgM Western Blot result. ECF No. 30 ¶ 6 (A.R. 232). Dr. Joseph diagnosed Myers with Lyme disease as of August 1, 2013. ECF No. 27-3 at PageID #: 369 (A.R. 218).

In response to this testing, Dr. Joseph examined Myers on September 11, 2013. Treatment notes from that visit indicate that Myers "ended up being diagnosed positive, treated then not treated and then treated again" by "multiple doctors" without ever having "a long course of treatment." ECF No. 27-3 at PageID #: 376 (A.R. 225). Dr. Joseph noted that Myers was positive on a Western Blot, and that Myers reported a number of symptoms associated with Lyme disease, such as arthritis, joint pain, fatigue, headaches, fevers, muscle pain, headaches, and problems with vision and hearing. ECF No. 27-3 at PageID #: 368, 376 (A.R. 217, 225). Dr. Joseph completed a Center for Disease Control (CDC) Lyme Disease Case Report form on September 13, 2013. ECF No. 30 ¶ 7 (A.R. 218). The form indicated that Myers suffered brief attacks of joint swelling, fatigue, numbness, tingling, pain, and short term memory loss, and that her Western Blot Serologic test results were positive. ECF No. 30 ¶ 7 (A.R. 218).

Myers's file was reviewed by a medical consultant, Beth Beumer-Anderson, RN, MSA, on two occasions, the first of which was detailed in a report dated July 12, 2013. ECF No. 31 ¶ 25 (A.R. 1010–15). With respect to Myers's Lyme disease, Ms. Beumer-Anderson acknowledged in her first report that "[s]ymptoms of Lyme's disease vary depending upon the

5

(4:14cv2421)

stage of the disease and the length of time since exposure." ECF No. 27-18 at PageID #: 1165 (A.R. 1014). In her second report, dated October 8, 2013, Ms. Beumer-Anderson noted that Myers did not have a rash or a raised area, which is a critical indicator of Lyme disease, at the site of deer tick bite. ECF No. 31 ¶ 28 (A.R. 1007). Ms. Beumer-Anderson also noted the finding of Dr. Limbu that Myers's testing was a false positive. ECF No. 31 ¶ 29 (A.R. 1007).

United informed Myers by letter dated October 28, 2013 that her claim for benefits was denied. ECF No. 31 ¶ 37 (A.R. 295–303). The letter set forth the following restrictions and limitations:

> It is the opinion of the review, based on the information received for review, the following restrictions and limitations would have been applicable: from the last day worked through four weeks, you were acutely treated for mono, no restrictions or limitations beyond this date. Not knowing the date of the left upper extremity injury, the reviewer assumes that from the last day worked through six weeks post-operative (surgery date March 29, 2013) the following left arm restrictions would apply: no overhead reaching; exertional activities to 10lbs., maximum, lesser weights of 1-5 lbs., frequently ; less occasional typing, handling and fingering. Avoidance of any activities that could cause trauma to the left arm (operating machinery, lever, etc).

ECF No. 27-5 at PageID #: 452 (A.R. 301). As to Myers' Lyme disease, the denial letter discussed both that Myers did not report a raised mark at the site of the tick bite, and that Dr. Limbu conclusion that Myers' testing was a false positive for Lyme disease. ECF No. 27-5 at PageID #: 451 (A.R. 300). The initial denial indicated that United did not consider any information relating to the treatment that Myers had been receiving from Dr. Joseph up until this point. ECF No. 27-5 at PageID #: 447–48 (A.R. 296–97).

In fact, Myers had continued to seek treatment from Dr. Joseph. On October 22, 2013, he noted that Myers reported feeling worse and experiencing pain throughout her body, but also that

6

(4:14cv2421)

Myers was "doing okay with no major complaints." ECF No. 27-4 at PageID #: 379 (A.R. 228). Dr. Joseph suggested that she should start on a new family of antibiotics to see if that would help. ECF No. 27-4 at PageID #: 379 (A.R. 228). On November 19, 2013, Dr. Joseph's records reflect that Myers' current antibiotic treatment made it difficult to treat her Lyme disease, and suggested that a more aggressive treatment involving IV antibiotics would be appropriate. ECF No. 30 ¶ 8 (A.R. 226–27). On December 27, 2013, Myers again visited Dr. Joseph, and his records paint a mixed picture. Although he again reports that Myers is "doing okay with no major complaints," Dr. Joseph also noted that she "is not doing any better" and is "still having the same complaints." ECF No. 27-4 at PageID #: 381 (A.R. 230). Dr. Joseph summarized Myers' condition in a letter to counsel on January 23, 2014, stating that, due to a past diagnosis of Lyme disease, Myers has chronic fatigue and joint pain. ECF No. 27-2 at PageID #: 302 (A.R. 151). Dr. Joseph recommended limitations on lifting to 2–3 pounds, sitting, standing and walking, reaching, pushing, pulling and manipulations. ECF No. 27-2 at PageID #: 302 (A.R. 151).

Myers, through counsel, appealed the benefits decision on April 11, 2014. ECF No. 31 ¶ 40 (A.R. 260–62). Upon receipt of the appeal letter, United sent Myers' file to Dr. Crossley for review. ECF No. 31 ¶ 41 (A.R. 114). In his report dated May 30, 2014, Dr. Crossley opined that the medical evidence did not support a diagnosis of Lyme disease; a Lyme IgM western Blot test was negative on January 22, 2013 and June 11, 2013, and though a test on July 29, 2013 was positive, the IgM test was negative, which was highly suggestive of a false positive test result. ECF No. 31 ¶ 42 (A.R. 114).

By letter dated June 12, 2014 United informed Myers that it was upholding its decision to

7

(4:14cv2421)

deny benefits.  ECF No. 31 ¶ 45 (A.R. 103–06).  United found that Myers could not support her diagnosis of Lyme disease.  ECF No. 27-1 at PageID #: 255 (A.R. 104).  United supported this finding by observing that Dr. Crossley opined that Myers's testing for Lyme disease were "highly suggestive" of a false positive.  ECF No. 27-1 at PageID #: 255–56 (A.R. 104–05).  United also noted Dr. Joseph's notes from October 22, 2013 and December 27, 2013 that she was "doing okay with no major complaints."  ECF No. 27-1 at PageID #: 256 (A.R. 105).  This portion of the denial letter, however, did not refer to Dr. Joseph's notes from September 11, 2013 and November 19, 2013, or his January 23, 2014 summary letter, or offer any reason for discounting this information in making its assessment of Myers's disability.

Myers filed a complaint on October 31, 2014, which alleged that United wrongfully terminated her disability benefits.  ECF No. 1.  After an unsuccessful mediation attempt, both parties filed opening briefs (ECF Nos. 19; 20), opposition briefs (ECF Nos. 23; 28), and Proposed Findings of Fact and Conclusions of Law (ECF Nos. 30; 31).  The matter is ripe for adjudication.

## II.  Legal Standard

When an ERISA plan gives the plan administrator discretion in interpreting its terms or making benefits determinations, as the parties agree the Plan at issue does, a court reviews the administrator's decision under the deferential arbitrary-and-capricious standard of review.  *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998).  Under the arbitrary and capricious standard of review, the court must uphold the administrator's decision if

(4:14cv2421)

the administrator's interpretation of the plan's provisions is "reasonable" or "rational." *Price v. Bd. of Tr. of Ind. Laborer's Pension Fund*, 632 F.3d 288, 295 (6th Cir. 2011) (quoting *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009)); *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010). The court "review[s] not only the insurer's conclusion, but also its reasoning." *Metropolitan Life Ins. Co. v. Conger*, 474 F.3d 258, 265 (6th Cir. 2007).

In reviewing the decision of the plan administrator, the Court may only consider the evidence in the administrative record, as that is the evidence that the plan administrator considered. *Wilkins*, 150 F.3d at 615. This standard of review does not require courts to "rubber stamp[]" a plan administrator's decision, however. *Schwalm*, 626 F.3d at 308. "A court must review the quantity and quality of the medical evidence on each side." *Id.* (quoting *Evans v. UnumProvident Corp.*, 434 F. 3d 866, 876 (6th Cir. 2006)). The decision must be upheld if it results from "a deliberate principled reasoning process" and is supported by "substantial evidence." *Id.* (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F. 2d 1140, 1144 (6th Cir. 1991)). Myers bears the burden of proving the plan administrator's decision was arbitrary and capricious. *Farhner*, 645 F.3d at 343.

### III. Analysis

#### A.

As mentioned above, a plan administrator's decision can be arbitrary and capricious because of the plan administrator's reasoning as well as the conclusion. The primary thrust of Myers' lawsuit is that United ignored findings from her treating physicians, and instead relied on the opinions of non-treating, non-examining doctors to deny benefits. ECF No. 20 at PageID #:

9

(4:14cv2421)

101. Under *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003), a plan administrator is not required to defer to the opinion of a treating physician, but it must provide an explanation for resolving conflicts between the treating physician and its own file reviewers. *Curry v. Eaton Corp.*, 400 F. App'x 51, 60 (6th Cir. 2010); *Houston v. Unum Life Ins. Co. of Am.*, 246 F. App'x 293, 302 (6th Cir. 2007). In this case, Dr. Joseph began treating Myers for Lyme disease, yet United only cites his treatment notes in their second denial of benefits letter, and only for two stray observations that Myers was "doing okay with no major complaints." For the reasons that follow, the plan administrator acted arbitrarily and capriciously.

The second denial letter evinces that United selectively picked from Dr. Joseph's notes. United suggests they were inconsistent with Myers' "report of being unable to return to her sedentary strength occupation requiring her to exert up to 10 lbs. of force occasionally and or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects." ECF No. 27-1 at PageID #: 256 (A.R. 105). United's reading of the October 22, 2013 and December 27, 2013 notes ignore passages favorable to Myers, however. For example, the denial letter quotes the physician note from October 22nd stating "doing okay with no major complaints" without explaining Dr. Joseph's decision to change antibiotic families due to the ineffectiveness of the previous treatments. ECF No. 27-4 at PageID #: 379 (A.R. 228). Furthermore, the denial letter quotes Dr. Joseph's December 27th note that Myers is "doing okay with no major complaints," but omits Dr. Joseph's observation that Myers "is not doing any better." ECF No. 27-4 at PageID #: 381 (A.R. 230).

United offers no explanation as to why only the observations favorable to the denial of

(4:14cv2421)

benefits warrant credence, and why the observations of Dr. Joseph favorable to the award of benefits, contained in the exact same notes, are ignored. Instead, its reliance on information provided by Dr. Joseph is the selective picking of evidence that the Sixth Circuit has described as "not the hallmark of a reasoned explanation." Conger, 474 F.3d at 266; see also Moon v. Unum Provident Corp., 405 F.3d 373, 381 (6th Cir. 2005); Spangler v. Lockheed Martin Energy Sys., Inc., 313 F.3d 356, 361–62 (6th Cir.2002) (concluding it is arbitrary and capricious for a insurance provider to rely on a vocational consultant's report in making a disability determination where the provider "cherry picked" the insured's file "in hopes of obtaining a favorable report").

Relatedly, United's reliance on Dr. Joseph's notes in piecemeal fashion (*i.e.*, quoting from two visits over the course of Dr. Joseph's treatment of Myers) ignores, without explanation, both the months in which Myers self-reported experiencing symptoms with a far greater severity, and the consistent picture painted by the entirety of her treatment by Dr. Joseph. The second denial letter completely omits any discussion of Myers' visit to Dr. Joseph in September, when Dr. Joseph found that Myers reported a number of symptoms associated with Lyme disease, and completed a Center for Disease Control (CDC) Lyme Disease Case Report form for her case. ECF No. 27-3 at PageID #: 368–69, 376 (A.R. 217–18, 225). The second denial letter also fails to discuss Dr. Joseph's belief in November that a more aggressive, IV-based treatment would be appropriate. ECF No. 30 ¶ 8 (A.R. 226–27).

The most glaring omission from the second denial letter is the January 23, 2014 letter written by Dr. Joseph that summarized Myers' condition and the restrictions and limitations that

11

(4:14cv2421)

he believed should be placed on Myers' ability to work.  ECF No. 27-2 at PageID #: 302 (A.R. 151).  There is no other medial opinion in the record from a treating physician that speaks to whether any restrictions on Myers' ability to work are warranted.  Significantly, this evidence was submitted in response to the initial denial that only imposed restrictions and limitations from the last day worked through four weeks for mononucleosis; and from the last day worked through six weeks post-operative of a March 29, 2013 surgery—neither of which were due to Lyme disease.  Dr. Joseph's summary letter contradicts this limited finding of limitation and restriction, yet United's second denial letter does not address it.  *See Conger*, 474 F.3d at 268 (holding that the plan administrator abused its discretion when it ignored contrary evidence without explanation); *Houston*, 246 F. App'x at 301 (finding that the plan administrator rejected without explanation vocational evidence that was uncontradicted in the record).

In total, the information from Dr. Joseph reveals that Myers consistently reported Lyme disease symptoms that varied in severity by month yet were nonetheless being actively treated by the physician, culminating in the narrative letter suggesting workplace restrictions.  United is not required to accept Dr. Joseph's conclusions, *Black & Decker Disability Plan*, 538 U.S. at 834, but it must explain why it chose to believe its non-treating physicians instead.  *Curry*, 400 F. App'x at 60.  The failure to do so is arbitrary and capricious.

United argues that it did not act arbitrarily or capriciously by relying on the opinions of its medical consultants, Ms. Beumer-Anderson and Dr. Crossley.  United contends that it acted in accordance with Sixth Circuit precedent because a plan administrator is permitted to choose between two competing views of disability and have that decision upheld under arbitrary and

(4:14cv2421)

capricious review. *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003). This is a correct statement of law; however, it ignores that the court "review[s] not only the insurer's conclusion, but also its reasoning" when determining whether the decision was arbitrary and capricious. *Conger*, 474 F.3d at 265. It is United's reasoning, not its conclusion, that is problematic. United denied benefits based on a selective review of Dr. Joseph's treatment notes, quoting language favorable to the non-disability assessment while inadequately explaining its basis for rejecting Dr. Joseph's observations favorable to Myers.

### B.

As a final consideration for whether the plan administrator acted arbitrarily and capriciously, Myers observes that United has a conflict of interest inherent in its role both in making the determination of disability and the entity responsible for making those payments. The Policy vests United with authority to make disability determinations and make payments for approved claims. ECF No. 27-1 at PageID #: 195 (A.R. 44). United admitted to having this dual role. ECF No. 8 ¶¶ 25–26. "A conflict of interest, if present, does not 'alter the standard of review.'" *Wages v. Sandler O'Neill & Partners, L.P.*, 37 F. App'x 108, 112 (6th Cir. 2002) (quoting *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir. 1998)). Rather, "a reviewing court is required to take the conflict into account in determining whether a decision is 'arbitrary and capricious.'" *Id.* (citing *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000)). "This requirement applies, however, only where there is 'significant evidence' that the insurer was motivated by self-interest." *Id.* (citing *Peruzzi*, 137 F.3d at 433). In this case, the aforementioned cherry-picking supports Myers' position that United acted out of

13

(4:14cv2421)

self interest.  By selectively quoting from Dr. Joseph's notes and omitting other portions, United appears to be reaching for a desired outcome rather than granting a full and fair review guaranteed by ERISA.   29 U.S.C. § 1133(2).

Having found United's decision denying Myers benefits was arbitrary and capricious and not the result of "a deliberate principled reasoning process" but rather resulting from the selecting of evidence deemed to support its conclusion, Schwalm, 626 F.3d at 308; Conger, 474 F.3d at 266, the Court does not find it necessary to also determine whether United's decision was also borne of a conflict of interest.  One perversion of process is entirely enough justification for a remand.

### C.

District courts "have considerable discretion to craft a remedy after finding a mistake in the denial of benefits."  Elliott v. Metro. Life Ins. Co., 473 F.3d 613, 621 (6th Cir. 2006).  A district court may either remand to the plan administrator for a full and fair inquiry, or award benefits retroactively.  Id.  Typically, a court will retroactively award benefits only when a plaintiff has clearly established disability under the Plan. Cooper v. Life Ins. Co. of N. Am., 486 F.3d 157, 171 (6th Cir. 2007); Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston, 419 F.3d 501, 513 (6th Cir. 2005).  In contrast, "where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled," remand is the appropriate remedy.  Elliott, 473 F.3d at 622 (brackets and quotation marks omitted).  Remand is also preferred "where the adequacy of claimant's proof is reasonably debatable."  Cooper, 486 F.3d at 172.

14

(4:14cv2421)

The appropriate remedy is to remand this case to the plan administrator with instructions to consider all the evidence of Lyme disease. United's problem is with its process rather than its conclusion. The Administrative Record is not indisputably clear on the disabling effect of Myers' Lyme disease. Rather, there appears to be a large amount of evidence that received cursory—if any—attention from United in its two letters denying benefits. As United has decided to select portions of Dr. Joseph's treatment notes instead of addressing the entirety of his treatment of Myers, it is impossible for the Court to determine whether she will ultimately be found to be disabled. *Elliott*, 473 F.3d at 622–23 ("We are not medical specialists and that judgment is not ours to make."). Remand with instructions to grant a full and fair inquiry would allow United the opportunity to cure the defect in its decision-making process that rendered its decision arbitrary and capricious.

### IV. Conclusion

The Court finds that the Plan Administrator arbitrarily and capriciously denied coverage because its decision was not the result of "a deliberate principled reasoning process." *Schwalm*, 626 F.3d at 308. Accordingly, the Court remands this case to the plan administrator for a full and fair review.

    IT IS SO ORDERED.

| | |
|---|---|
| March 29, 2016 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |